We move to the second case this morning, United States v. Mansfield. Daniel Hillis Morning. May it please the court. Counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Mr. Mansfield. He raises a single issue on this appeal, and that is whether the district court erred in relying on unadjudicated arrest to impose sentence, the sentence here being 188 months imprisonment. And the answer to that question, our view, is a definite yes. Mr. Hillis, by the way, it's nice to see you. I feel like I know you. I've only met you over Zoom since I started, so it's nice to see you in person. I have a question for you about the pre-sentence report in this case. The pre-sentence report lists the arrests. It lists them in detail, and there was no objection to that information contained in the pre-sentence report. So you would agree, I think, that any objection to that information being contained in the pre-sentence report was waived. The judge was allowed to rely on, and I'm not talking about the circumstances leading up to the arrest. The judge was allowed, in other words, your client never said, I wasn't arrested on January 3rd, 2014. Absolutely. So the judge, any objection to the actual arrest taking place, you would agree, is waived, right? That's correct, Judge. Go ahead. So the information would be pertinent to the PSR and should be in there under Rule 32, and under 3661, the judge can consider certain information so long as it's reliable. The fact of the arrest is not disputed. It's the reliability, Judge. It's just the only issue in this case is whether or not the judge was allowed to rely on or at least mention the arrest as part of the 3553 factors in articulating the basis for his sentence. That's right. And so there shouldn't be an objection to paragraph 69 to 89 of the PSR that detailed the arrest unless they didn't occur. And then that would be the defense's burden to convince the judge that the arrest didn't happen as a factual matter. Our contention, though, is that under the court's case law, as well as the case law from not just the 3rd and 5th circuits, would be to say that the information here is nevertheless unreliable. So we wouldn't expect a defendant to make an objection to information that is appropriately in the PSR. Rather, it's a lack of detail. Do you think there's a difference between one or, let's say, take a defendant who has one or two criminal history points and maybe one or two arrests, and the judge relies upon the arrests in fashioning a sentence in addition to the one or two criminal history points, one or two criminal history points in the types of cases we see are insignificant, relatively, right? Relatively insignificant. And most judges don't increase sentences for one or two criminal history points. If a judge used one or two criminal history points plus two or three arrests, do you view that differently than when a judge relies upon a series of arrests, I think in this case about 20, and criminal history points that are, I think, put him in Category 6, right? I forgot what the exact number was. Was it 17 or something? I can't remember exactly. But this is, in my view at least, a massive criminal history. Is there any difference between a case where a defendant may have one or two arrests versus a case where a defendant may have a history of 20 arrests? So long as the arrests are reliable, there's no problem with the judge using them to impose a sentence. But even if it's a single unadjudicated arrest, the authority from the First, Fifth, and First, Third, and Fifth Circuits says that their arrest record should not be used to impose sentence unless there's factual information to demonstrate it's reliable insofar as an indicator of any recidivism. So similarity of type of offense, for instance, judge. But a single arrest is the instance that has been noted in one of the First Circuit cases, and if not, certainly it might be the Third Circuit case then in Berry. But I think that all three of the circuits that I've mentioned, other than the Seventh Circuit, have said that the volume of arrests isn't the significant thing. It's the reliability of the arrests, and even one unreliable arrest violates a due process right. But what concerns me is the volume of arrests tend to lead towards reliability. And what you're suggesting here is that a defendant who has been arrested 20 or 30 times, that the district judge should just ignore that, just totally ignore it in fashioning a sentence. Because that series of arrests with the series of convictions, we all know that there are bad arrests and there are good arrests, and often arrests result in no conviction for one reason or another. People get lost in the system, they plead guilty to something else, they get charged by another court, they plead guilty, the prosecutor decides to dismiss the case, whatever. Or it's a bad arrest. Or it's a bad arrest, and I agree with that, or it's a bad arrest. But this long history of arrests does show some disrespect for the law, and I'm concerned about suggesting to district court judges that when you have this volume of criminal history of arrests, you should ignore the arrests unless the probation department tracks down all of the information supporting the arrest. Particularly when the client lodges, or the defendant in this case, lodges no objection to the arrest to say, wait a minute, on these three or four occasions I was arrested, but they were bad arrests. He does none of that here. He doesn't even suggest it. Right. It's not incumbent upon him to object to something that was appropriately in the PSR. It's only if the judge wants to rely on this that the judge needs then to assure himself through record evidence in the PSR and admission by the defendant, things along those lines. Proof by the government that there is sufficient indicia of reliability of the arrest. Otherwise, it's a bare arrest. We don't know if the cops didn't like a particular individual and arrest them repeatedly to harass them. Not saying that's what happened here, Judge, but the thing is we can't know based on this record what the cause is for the arrest. We know they're unadjudicated, though, ultimately, in the PSR. Paragraphs 69 to 89 have no information to show us that there's any factual similarity even to the instant arrest. So under Lopez Hernandez, we would look to that and we would say that it's appropriate to rely on the volume of arrests as an indication of recidivism when there's some similarity between the instant offense and the arrest. That doesn't happen here. We have domestic battery, intimidation, battery, resisting arrest. None of those things are related to drug offenses that I can tell from the PSR. The PSR has no information on it. They're not similar to the instant offense. So even under this court's jurisprudence in Lopez Hernandez or if the government wants to hang its hat on the Drain decision where they say that this is okay and blessed by the Seventh Circuit, it's not. Because in Drain, one of the essential things is there was a weighing of the seriousness of the offense relative to those other arrests and there was an imposition of a below-guideline sentence. Of the three factors that Drain suggested were of importance, two of them are missing here. And by the way, Drain was connected with a conjunctive, one, two, and three, and were missing any one of them, then the reasoning of Drain would be inadequate. So, Judge Kirsch, I don't mean to resist reason, but I don't think that I am. I'm resisting a lack of evidence and I am then insisting on due process. And due process is one of the things that we can say as a constitutional matter applies at all sentencing. So under the Tucker and Townsend line of cases, we have from the Supreme Court, a defendant has a due process right to be sentenced on reliable information. If the judge wants to rely on those arrests, it can do different things. It can insist the probation officer include more information, otherwise the arrests are not entitled to any consideration for the imposition of sentence. The government can step in and bring in any information that it wants. It can try to tender police reports, but I think that those under the Downey v. Quinn Carr case would be unreliable. They were not even subject to an exception to the hearsay rules, as you know. So I think that there would have to be more information than is here. The problem is the record in this case. I appreciate your advocacy, by the way. I appreciate it. But I'm concerned here with the lack of any objection whatsoever. And I understand, and that's why I started out by saying I understand that the arrests occurred and the defendant did. But without objection, the question then becomes what information does the government have to put forth and what information does the probation department have to put forth? Usually in these pre-sentence reports, as you know, we see a very short paragraph, three sentences that could have extraordinarily damning information regarding a particular defendant, just stated as fact, that comes from an FBI 302 copy and pasted into paragraph nine of the pre-sentence report, right? But the judge will rely upon paragraph nine of the pre-sentence report. And those three sentences ultimately trace back to a DEA 6 or an FBI 302 without objection from the defendant. And that's what concerns me here. The judge has to go through the pre-sentence report and determine, all right, what can I rely on in determining a sentence and what can't I rely on in determining a sentence without any help from the defendant? Right. Look to the case law. So under Lopez Hernandez, what was sufficient there versus what is here. And the deficiencies here are the glaring thing. Most judges, in my experience, disregard this. If there's not reliable information, they know that the flag is up. Due process prevents the judge from relying on this. So there's nothing for the defense to object to, because again, the information is correct. There is an arrest. So the judge should just steer clear of it. Judges have lots of reasons, lots of factors they can rely on to impose sentence, and they're going to escape any real scrutiny of their sentence upon review. But when there is a due process violation that invites scrutiny here, then we need to look again to the record. Look at paragraph 69 to 89. What's the information there? Dismissed. There's no information. There's nothing. So even by way of reference to your example, the 302 that's copy and pasted would have a couple of sentences of information. There's nothing of the sort here, Judge. Paragraph 69 to 89 have no information at all to suggest that this is actual conduct that the person may have engaged in. And the case law says to look at that. That's what can bolster the judge's ability to rely on these things. And so the information that is missing is something that the judge then proceeds at his peril to rely on something that is ultimately unreliable, as demonstrated by the record. And that's the case here. Now, Judge, you have not asked about standard review, so I will say that we believe that under Esposito, this is a procedural error and it's de novo. There's nothing further to be done. By way of objection, under Bartlett, we don't have to take exception once the judge relies on something. And I think this came out of the blue, that this was a surprise to defense counsel, that nobody had made a big point of this up to now. Mr. Hillis, though, Esposito is distinguishable in the sense that Esposito, we're talking about an exploration of the judge's calculation of consecutive concurrent sentences after the court had paragraph, appendix 29, a reference to the history. Esposito provides in its decision that when one is referencing whether the defendant is satisfied with the court's treatment of their remaining arguments and mitigation, that would be an exception, correct? It would be, but we also have Garcia-Segura in Speed that says a general invitation of the anything wrong here, any objections, things like that is not sufficient to establish a waiver for certain. And this is nevertheless a procedural error. And once it occurs, we don't need to take exception under the Bartlett case, for instance, judge. So we believe that this is nevertheless a procedural error. It does fit within what the discussion was in Esposito and Zimbe. Those cases still tell us that this is a procedural error that the judge committed and there was no opportunity to object prior to the imposition of sentence. And there was no need then to take the error such that the defendant needed to do something more than he's doing now, which is simply to press his due process rights upon the appeal. Isn't there a distinction though, that arrests were part of the PSR could have been objected to in the defendant's filings. Here, judge Magnus Stinson in the Esposito case, nobody knew the numbers that were going to come out of her mouth. And it wasn't until the numbers came out of her mouth in Esposito that in fact, the clarification was sought. It's a factual difference for sure. But there is again, no ability to object to something that's properly in the PSR. The number of arrests is a factual matter. It's just when the judge relies on them, is there sufficient indicia of reliability in the PSR information to show that the judge could rely on them. So there wouldn't be a need to take exception, excuse me, to make an objection. And then furthermore, even if we are in the government friendly territory of plein air review, we'd rely on the Barry's, the Third Circuit's Barry decision from 2007, that said that this is plein air to rely on there. I think it was even a single unadjudicated arrest. So I think that even if everything that Your Honor says is correct, and we didn't have de novo review, and we are under plein air, and there's no waiver here, because there's certainly no strategic reason to say that to suggest that these are things that the judge should be able to rely on in sentencing. The argument that it says could have been made, it would have failed. It would have been an inability to say that the enhancement the government says should have been argued instead, and such that this demonstrates a strategic decision. That just doesn't fly in our view to explain that in our briefs. I'll rely on it. Thank you. I'll save the balance of my time. Thank you. I please the court. I'm Julian Waring, and I represent the FLEA in this case. I wanted to begin by addressing a point that Judge Kirk raised, which is that the government believes that it was incumbent on Mr. Mansfield to raise his objection to consideration of the arrests that were before him in 26 numbered paragraphs of the PSR. This court's precedent in Lopez Hernandez states that in that case, and I quote, in light of the defendant's failure to challenge the accuracy of anything in his lengthy arrest record, the judge was entitled to assume that the 41 arrests considered as a whole, when coupled with the defendant's five convictions, gave a more accurate picture of the likelihood of recidivism, end quote. And so this court's precedent provides that it's appropriate to consider arrests, and in Lopez Hernandez, most of those arrests were, like the arrests in this case, arrests that were unaccompanied by a factual summary. And so Mansfield knew that that, or his counsel should have been aware of that precedent, and his counsel obviously knew that these arrests were part of the PSR. And so he had an obligation to raise that objection, and by failing to raise that objection, this does become plain error review. What about Mr. Hillis' argument that we should adopt the rule from the first, third, or fifth circuit, indicating that there needs to be some trigger, or some initiation to bring it to the court's attention? Well, I don't believe that's an accurate statement of those courts' precedent. They are in line in terms of their statement of the principles that governs reference to arrests. All three of those circuits, the first, fifth, and third, I believe it is, state the same principle that is stated both in Lopez Hernandez and PSR, in terms of determining whether you can rely on those for purposes of sentencing, you assess multiple, or four factors, which is you look to the volume, you look to whether there's a similarity between those arrests and the charged crime, and you look to whether there is a similarity between those arrests and his conviction history, and then finally you look to whether did the defendant raise an objection to these in the case. We talk about volume of arrests as well. If you have a substantial volume, then you can get to a point where it's appropriate to consider. Why can't the judge just consider one single arrest? If the defendant doesn't object to its inclusion in the pre-sentence report, or at least object in some... What I'm concerned about here is what line are we drawing for district courts? How are district courts in sentencing defendants to know what they can rely upon and what they can't? Many defendants have a long, especially in Chicago, as you say, many defendants have a long history of arrests with no convictions. And what's a district judge, what are we supposed to tell a district judge sitting in the Northern District of Illinois who's looking at a defendant with no criminal history points and 14 arrests with no disposition? What is a judge supposed to do with that information? I guess, is a judge supposed to ignore it? And when is a judge supposed to draw a line as to what the judge can consider and can't consider, especially if a defendant doesn't object to their inclusion in the pre-sentence report? Well, unfortunately, I don't think that this court's precedent provides a bright line rule of guidance for the lower courts, and I don't know that the court could. What the court has established is sort of, it's identified a number of factors that the courts should look to to determine the reliability, and it is going to be sort of a consideration of all of the factors. Fortunately, in this case, the circumstances were clear for the district court because there were 26 arrests, which is a very high volume of arrests, and there were similarities between those arrests. He had four of the arrests were for drug crimes, and there were eight charges involved in those four arrests, including several felonies, and so those were similar to the charge crime, and then he also had multiple correspondences between his arrests and his prior convictions, and then finally, he never said, which he had an opportunity to do multiple times before he got to the point of, you know, mistaken identification, and there is precedent for . . . Should that end it? Should that end the inquiry? If he states, if the defendant states . . . If he doesn't object to it, if he doesn't object to their inclusion in the pre-sentence report, can the judge rely upon them? Your Honor, I think that would be very helpful guidance. To date, the court's precedent does not expressly state that if you don't object to an arrest, either with respect to the fact that it occurred . . . Right, it doesn't go that far, but should it? That's my question, should it? I think Mr. Hillis would say no because of due process concerns. I think that would be appropriate. An arrest is relevant if it occurred and if it arose from underlying criminal conduct, and it is easy for a defendant to state that objection, to just state in one of his pre-sentence filings that this arrest arose from ex-conduct that was not criminal. This is the actual basis for it. That certainly would be simpler, both for defendants and the courts. It would provide a bright-line rule that would be, you know, perfectly reliable, Your Honor, so I think that would be appropriate. Here, it's clear that Judge Sweeney, the arrests that he was talking about were not drug-related, correct? Judge Sweeney referenced both, and I don't know if he specifically . . . I know that he did reference other arrests that were not drug arrests. Of course, Judge Sweeney referenced the arrests only in a single sentence, in his entire sentencing statement, which included extensive consideration of all of the other 3553 factors, but Judge Sweeney was looking at arrests that were not drug arrests in that sentence, that's correct. And this Court's precedent provides both in Drain and Lopez-Hernandez that that is appropriate. In Drain, both in Drain and in Lopez-Hernandez, the arrests that did not result in conviction that were considered in those cases included multiple arrests . . . He discussed them almost in passing. He really didn't focus on them. Judge Sweeney, Your Honor? I say he discussed them in passing. He didn't really focus on those prior arrests. Your Honor, I would agree that Judge Sweeney did not . . . it did not seem . . . it was very far from being a primary consideration. There were multiple things for Judge Sweeney to look at, and the record reflects that he did look at them. In terms of the fact that this defendant was . . . he had a criminal history of six. There was a lot to look at there. He had the maximum criminal history. Well, it certainly would draw . . . as a sentencing judge, it would certainly draw your attention to it. The fact that there were, what, 49? How many arrests? There were 26 arrests, Your Honor, but there were approximately, I believe, 49 charges involved in those 26 arrests. But, Judge Sweeney did reference those only in a single sentence, and then he did look to multiple other factors as well. I think he was also referring to when he said that, right before he mentioned the arrests, he was talking about the two young girls that were in the home. And so he mentions convictions and arrests in the same . . . he says, in all of these convictions and arrests, arrests that included . . . and then he acknowledges they weren't reduced to judgment, but included domestic battery, intimidation, battery, neglect of a dependent, many resisting law enforcement. And then he moves on. I don't think he said it anywhere else. I don't think he referred to arrests. That's correct. That is the sole statement that Judge Sweeney made regarding the arrests that did not result in conviction. And, continuing to that point, in terms of Judge Sweeney's discussion of these arrests, the . . . this court's precedent in Draynham-Lopez-Hernandez is directly controlling, and it was appropriate for the district court judge to consider the arrests here, under that precedent, because it satisfied all of the indicia that those two decisions establish for consideration of arrests at sentencing. But, even if this court were to find that Draynham-Lopez-Hernandez should be reversed, or do not control, the appellant would have to show that there would be a different outcome. In order to demonstrate under the plain error standard, that it affected his substantial rights, he has to show that there would be a different outcome. And, as your Honors have noted, Judge Sweeney referenced these sentences in only a single sentence. And, it's evident from the record that Judge Sweeney was deeply concerned by the presence of the underage girls in the house to which the drugs were shipped. There were at least two references to that that carried more emotional weight, or at least as much emotional weight, as the references to the arrest record. And so, the appellant would have to show that had Judge Sweeney not made that single reference to the arrest record, that he would have departed downward from the very bottom of the guidelines range, in order to give Mr. Mansfield a lower sentence than what the lowest of the guidelines range indicates. And, that's simply not plausible given the sentencing transcript here. Your Honors, unless the Court has any further questions, the United States would rest on its brief and ask that you affirm the judgment of the District Court. Thank you. Thank you, Counsel. Mr. Hillis. I'll begin with harmless error. The government wants to say there's harmless error here, but it would be the government's responsibility to point to somewhere in the sentencing transcript where the judge said, and I would give the same sentence regardless. It hasn't done that because that didn't happen here, so there's no harmless error. Relying even on unreliable information just once is too much. That's sufficient to establish a due process violation. It's not the quantity of times that the judge looked to unreliable information, commented on it, and used it to impose sentence. Once is enough. We have plenty of cases from the Seventh Circuit where Corona Gonzalez, I believe, is one instance where a judge said that somebody did something, came across the border to engage in additional criminal conduct. It just takes one instance, and that's enough. If the government wants to rely on Lopez Hernandez and on Drain, then look to those cases and see what they said. They said that there's supposed to be similarity of arrest in the conviction that's pending for sentencing. That didn't happen here. In Drain, was there a below-guideline sentence? Yes. Here, was there? No. They said that was important in Drain. I'm not sure those cases say that it has to be. I think those cases say in that situation it had, but we can go further than that here, I think. Fair enough. If we wanted to. You could, but I think, Judge, that the circuit is poised to have a circuit split, really, with the First, Third, and Fifth. I point to my reply brief at pages 6 and 7, Guajardo-Martinez, United States v. Johnson. We cite Zapete-Garcia and Diaz-Lugo, as well as Moreo-Perez, that says, or independent proof of conduct. Other case from the First Circuit, the Zapete-Garcia says a single arrest for which there's no reliable evidence of wrongdoing is improper and it warrants remand. So, where Your Honor is saying if there's a single arrest or what needs to be done to alert the district court, we think that's already been said in the case law. District courts just need to be mindful of that. We're not going to insist, I think, on defendants making objections to information that should be in the PSR. It's rather for the judge to be careful and not rely on unreliable information to impose sentence at the risk of a due process violation. Thank you. Thank you. Thanks to both counsel and the cases taken under advisement.